UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ZULAY ANDREA ALVAREZ, GERARDO AYALA,
ANIBAL YAGUACHI CAMPOVERDE, EDUARDO
GABRIEL VILLAFUERTE CHAVEZ, CESAR CUA,
RAFAEL HERNANDEZ, OSCAR SANCHEZ JUAREZ,
EDUARDO MUMOZ, ELIAS ANTONIO CHAVEZ
PENA, and ALEJANDRO PEREZ, on behalf of
themselves, and those similarly situated,

                             Plaintiffs,

                  -against-

FINE CRAFTSMAN GROUP, LLC, JOSEPH
ZYSKOWSKI, and KRZYSZTOF POGORZELSKI,
jointly and severally,

                          Defendants.
------------------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

**20-CV-10452 (GBD) (JW)**

**JENNIFER E. WILLIS, UNITED STATES MAGISTRATE JUDGE**

**TO THE HONORABLE GEORGE B. DANIELS, UNITED STATES DISTRICT
JUDGE:**

      Before the Court are cross-motions for summary judgment in an action brought

under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et seq.

("FLSA"), with supplemental claims under the New York Labor Law ("NYLL") and

New York City Human Rights Law ("HRL").  Plaintiffs are former residential

construction workers who move for partial summary judgment, asking the Court to

rule that: (1) Fine Craftsman Group ("FCG") is subject to enterprise coverage under

the FLSA; (2) Plaintiffs were employed by FCG; (3) the Individual Defendants were

Plaintiffs' employers under the FLSA and NYLL; (4) Plaintiffs Alvarez, Ayala, Cua,

and Hernandez's tenure and hours worked are undisputed; (5) Plaintiffs Juarez and

Munoz's tenure is undisputed; (6) Plaintiff Perez's hours worked are undisputed; (7) all Plaintiffs worked during a several week period of nonpayment from August to October 2018 (the "nonpayment period"); (8) all Plaintiffs did not receive payment for their first week of work; (9) Defendants' conduct was willful and thus the three-year statute of limitations under the FLSA applies; (10) Defendants failed to pay overtime; (11) Plaintiffs Alvarez, Ayala, Cua, Hernandez, and Perez are entitled to minimum wage and overtime wages owed to them during the nonpayment period; (12) Plaintiffs Alvarez, Ayala, Cua, and Hernandez are entitled to the wages owed to them for their first week of work; (13) Plaintiffs Ayala, Cua, and Hernandez are entitled to their overtime pay for the entirety of their tenure; (14) Plaintiffs are entitled to liquidated damages under the FLSA and NYLL; (15) Defendants are liable to all Plaintiffs for failure to issue wage notices as required by New York's Wage Theft Prevention Act ("WTPA"); and (16) Defendants are liable for failure to issue weekly wage statements as required under the WTPA.  Dkt. No. 51.

In their cross-motion for summary judgment, Defendants FCG, Joseph Zyskowski ("Zyskowski") and Krzysztof Pogorzelski ("Pogorzelski") (collectively "Defendants") ask the Court to rule: (1) Zyskowski and Pogorzelski are not employers under the FLSA or NYLL and thus claims against should be dismissed; (2) Plaintiffs' claims under the FLSA accruing more than two years prior to the commencement of this action should be dismissed as time-barred; and (3) that it declines to exercise supplemental jurisdiction over Plaintiffs' remaining state and local law claims.  Dkt. No. 47.  For the reasons stated herein, the Court respectfully recommends that

Plaintiffs' motion be granted in part and denied in part, and Defendants' motion be denied.

## BACKGROUND

The following facts are undisputed.[1]  From 2017 to 2019, FCG, a limited liability company, "provided residential construction services in both New York and New Jersey."  Dkt. Nos. 51-1 ("Pls.' 56.1 Stmt.") ¶¶ 1, 3; 47-1 ("Defs.' 56.1 Stmt.") ¶¶ 1, 3.  All Plaintiffs performed construction work, except Plaintiff Alvarez who worked as a cleaner, for the benefit of FCG.  Pls.' 56.1 Stmt. ¶¶ 9, 11.  Defendant Pogorzelski

---

[1] "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing the district courts from the need to hunt through voluminous records without guidance from the parties."  Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 74 (2d Cir. 2001).  Local Rule 56.1, however, does not relieve the party seeking summary judgment of the burden of establishing that it is entitled to judgment as a matter of law.  Id.  Thus, the Court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement; it also must be satisfied that the moving party's assertions are supported by the record.  See Vt. Teddy Bear Co. Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004); see also Holtz, 258 F.3d at 74; Zerafa v. Montefiore Hosp. Hous. Co., Inc., 403 F. Supp. 2d 320, 329 n.12 (S.D.N.Y. 2005).  The Court is free to disregard factual assertions not supported by the record.  Holtz, 258 F.3d at 74.  The Court notes that Plaintiffs' 56.1 Statement ("Pls.' 56.1 Stmt.") contains "facts" which are not supported by the evidentiary materials cited.  See, e.g., Pls.' 56.1 Stmt. ¶¶ 82–83 (citing D00153–154, which are not in the record); ¶ 95 (stating Defendants never paid Plaintiffs overtime pay and citing Defendants' responses to Plaintiffs' Requests to Admit without providing the statements requested to be admitted such that the Court can determine what Defendants are admitting or denying, and citing deposition transcript testimony that does not support such statement); ¶ 96 (citing evidence that does not support statement made); ¶ 100 (stating "at various times the Company paid workers approximately two months late" even though the deposition transcript cited only refers to one time that was done; ¶ 102 (stating Defendants knew of their obligation to keep accurate records but citing deposition transcript testimony reflecting only Zyskowski's awareness of same); ¶ 104 (citing deposition transcript testimony not in the record); and ¶ 107 (citing paragraphs of Defendants' Answer that do not support the statement made).  The Court will not deem such facts, although not specifically disputed by Defendants, as admitted.

is the sole member of FCG.  Defs.' 56.1 Stmt. ¶ 2.  Defendant Zyskowski was hired by Pogorzelski as a project manager for FCG.  Pls.' 56.1 Stmt. ¶¶ 15, 17.  As discussed in greater detail below, the parties contest Pogorzelski's and Zyskowski's responsibilities and relationship to Plaintiffs.

Plaintiffs filed their complaint in this action on December 10, 2020.  Dkt. No. 1.  Following discovery, Plaintiffs and Defendants filed the instant cross-motions for summary judgment on April 14, 2022.  The motions were fully briefed on May 12, 2022.

## DISCUSSION

### I.    Legal Standard

To prevail on a motion for summary judgment, the movant must "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the burden of demonstrating the absence of a question of material fact.  In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party.  Scott v. Harris, 550 U.S. 372, 378 (2007); see also Holcomb v. Iona Coll., 521 F.3d 130, 132 (2d Cir. 2008).  To survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," because "conclusory allegations or denials . . . cannot by themselves create a genuine issue of

material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).

Only disputes over "facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Johnson v. Killian, 680 F.3d 234, 236 (2d Cir. 2012) (citing Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003)).

## II.    FCG is Subject to Enterprise Coverage

Employees qualify for the FLSA's protections if (1) in any workweek the employee is "engaged in commerce or in the production of goods for commerce," 29 U.S.C. § 206 (individual coverage), or (2) the employee "is employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1) (enterprise coverage). A defendant business engages in commerce or in the production of goods for commerce if it (1) "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person"; and (2) "is an enterprise whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A).

The parties do not dispute that Plaintiffs "us[ed] materials produced out of state including paint, tape, drywall, wood, and residential fixtures, and cleaning

supplies such as detergent as to Plaintiff Alvarez." Pls.' 56.1 Stmt. ¶ 9. FCG's gross receipts or sales were less than $500,000 in 2017 but were greater than $500,000 in 2018 and 2019. Id. ¶ 6; Dkt. No. 59-6 at D0167, D0169, D0171. Therefore, FCG is subject to enterprise coverage for the years 2018 and 2019.

## III.    FCG Was Plaintiffs' Employer

The FLSA creates liability for any "employer" who violates its terms. See, e.g., 29 U.S.C. § 207(a)(1). An "employer" is defined broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The definition of "employer" may apply to "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons," (29 U.S.C. § 203(a), (d)) and an individual may be employed by more than one employer. 29 C.F.R. § 791.2(a). With respect to the NYLL, "courts in this Circuit 'have interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA.'" Sethi v. Narod, 974 F. Supp. 2d 162, 188 (E.D.N.Y. 2013) (quoting Spicer v. Pier Sixty LLC, 269 F.R.D. 321, 335 n.13 (S.D.N.Y. 2010) (collecting cases).

The Court finds that FCG was Plaintiffs' employer under the FLSA and NYLL. This conclusion is undisputed and supported by the record. See Pls.' 56.1 Stmt. ¶¶ 10–14; Defs.' 56.1 Stmt. ¶ 4.

## IV.    The Individual Defendants Were Plaintiffs' Employers

Although neither the Second Circuit nor the New York Court of Appeals has spoken on the issue, "district courts in this Circuit have consistently interpreted the

definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA." Inclan v. New York Hosp. Grp., Inc., 95 F. Supp. 3d 490, 511 (S.D.N.Y. 2015) (quoting Ho v. Sim Enters. Inc., No. 11-CV-2855 (PKC), 2014 WL 1998237, at *10 (S.D.N.Y. May 14, 2014)); see also Spicer, 269 F.R.D. at 335 n.13 (FLSA and NYLL "employer" definitions are treated "coextensively").

To determine whether a particular defendant is an employer for purposes of the FLSA and NYLL, this Circuit applies the "economic reality" test , which has four factors to determine whether an employer exercises "formal control" over workers: whether the alleged employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984) (internal quotation marks omitted).

Alternatively, a defendant may be characterized as an employer if it exercises "functional control" over the workers in question. To assess whether a putative employer exercised functional control over a worker, courts consider: "(1) whether [defendant's] premises and equipment were used for the plaintiffs' work; (2) whether the [defendant] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [defendant's] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [defendant] or [its] agents supervised plaintiffs'

work; and (6) whether plaintiffs worked exclusively or predominantly for the [defendant]." Zheng v. Liberty Apparel Co. Inc., 355 F.3d 61, 72 (2d Cir. 2003).

Neither the *Carter* nor *Zheng* factors impose a "rigid rule for the identification of an FLSA employer." Irizarry v. Catsimatidis, 722 F.3d 99, 105 (2d Cir. 2013) (quoting Barfield v. New York City Health and Hospitals Corp., 537 F.3d 132, 143 (2d Cir. 2008). Rather, they offer a "nonexclusive and overlapping set of factors to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." Irizarry, 722 F.3d at 105 (internal quotation marks omitted). Ultimately, the Second Circuit "treat[s] employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." Barfield, 537 F.3d at 141–42. And while the Second Circuit has found that the "*Zheng* factors are most relevant in the context of subcontractor relationships," "it is not uncommon for courts to consider both the *Carter* and *Zheng* factors." Suarez v. Murray, No. 20-CV-3514 (JCM), 2021 WL 1240518, at *6 (S.D.N.Y. Apr. 2, 2021).

Plaintiffs cite to Zyskowski's and Pogorzelski's own statements in their depositions regarding their work and role in relation to Plaintiffs to satisfy the *Carter* and *Zheng* factors. Dkt. No. 51 at 8–9. Zyskowski's and Pogorzelski's declarations in support of their motion for summary judgment dispute each *Carter* factor. See Dkt. Nos. 57-1 and 57-2. Zyskowski and Pogorzelski make no effort to reconcile or otherwise explain the inconsistencies between their deposition testimony and their declarations. However, Plaintiffs correctly note that "a party may not create an issue

of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." Jeffrey v. Montefiore Med. Ctr., No. 11-CV-6400 (RA), 2013 WL 5434635, at *14 (S.D.N.Y. Sept. 27, 2013) (citing Hayes v. N.Y.C. Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996). Accordingly, the Court declines to consider the inconsistent portions of the Individual Defendants' declarations in adjudicating the parties' motions.

### a. Zyskowski

As to the first *Carter* factor, the power to hire and fire employees, Zyskowski testified that as an FCG project manager, he could hire and fire workers. Dkt. Nos. 50-4 at 23; 50-3 at 61. As to the second *Carter* factor, supervision and control of employee work schedules or conditions of employment, Zyskowski testified he was "not involved in the details" and agreed that he was "a big picture manager." Dkt. No. 50-4 at 53. However, he also testified that he scheduled which worksite employees would work at on a given day. Id. at 33–34. He inspected project progress "pretty often" and if he saw an issue regarding the project's progress, he would speak to the worker responsible or the project foreman. Id. at 51–52. As to the third *Carter* factor, determination of the rate and method of employee payment, Zyskowski testified that he determined whether to hire a worker for a particular wage. Id. at 24–25. Regarding the fourth *Carter* factor, maintenance of employment records, Zyskowski testified, and Pogorzelski agreed, that he kept track of employee hours and relayed this information to the FCG office. Dkt. Nos. 50-4 at 31, 67, 83; 50-3 at

96. Accordingly, all four *Carter* factors support the conclusion that Zyskowski was Plaintiffs' employer under the FLSA and NYLL.

Regarding the first *Zheng* factor, there are no allegations that Zyskowski's premises and equipment were used. Therefore, the first factor is not met. The second, third, and fourth *Zheng* factors – whether the putative employer had a business that could or did shift as a unit from one putative joint employer to another, the extent to which plaintiffs performed a discrete line-job that was integral to the putative employer's process of production, and whether responsibility under the contracts could pass from one subcontractor to another without material changes – are inapplicable to this case. For the reasons discussed previously as to the second *Carter* factor, *Zheng* factor five, the degree to which the putative employer or its agents supervised plaintiffs' work, favors Plaintiffs. As to *Zheng* factor six, whether plaintiffs worked exclusively or predominantly for the putative employer, seven Plaintiffs worked between 40 and 51.5 hours per week for Zyskowski (Pls.' 56.1 Stmt. at 7–8) and therefore worked primarily for him.

The Court thus finds that all four *Carter* factors and at least one *Zheng* factor weigh in favor of concluding that Zyskowski was Plaintiffs' employer. Zyskowski was also in a position to be aware of and prevent alleged violations of the FLSA and NYLL because he determined whether to hire a worker for a particular wage. Dkt. No. 50-4 at 24–25. Therefore, under the totality of the circumstances, the Court finds that Zyskowski qualifies as Plaintiffs' employer under the FLSA and NYLL. The Court thus recommends that Defendants' summary judgment motion be denied as to

Defendants' request to dismiss Plaintiffs' claims against Zyskowski individually and Plaintiffs' summary judgment motion be granted as to Zyskowski's qualification as Plaintiffs' employer.

### b. Pogorzelski

Defendant Pogorzelski is the sole owner and president of FCG. Dkt. No. 50-3 at 8. As to the first *Carter* factor, there is inconclusive evidence in the record as to whether Pogorzelski had the power to hire and fire employees. Zyskowski, who Pogorzelski hired to be a project manager (Dkt. No. 50-4 at 14, 22) asserts that Pogorzelski "probably" provided advice to him regarding hiring and firing workers. Id. at 24. Such evidence is insufficient to conclude that Pogorzelski had the power to hire and fire workers. As to the second *Carter* factor, supervision and control of employee work schedules or conditions of employment, Pogorzelski testified that he supervised conditions of employment, even if indirectly. He visited job sites to see work progress so that he could invoice clients. Dkt No. 50-3. at 24. He managed workers through a project foreman. If he saw workers were doing something he did not like, he would relay this information to the project foreman who would then tell the workers. Id. at 25. However, if he saw a worker doing something unsafe, he could tell the worker directly. Id. at 26. Therefore, the second factor favors Plaintiffs.

As to the third *Carter* factor, determination of the rate and method of employee payment, Pogorzelski testified that project manager Zyskowski set employee wages without his approval. Id. at 47, 61. However, Zyskowski testified he had to ask Pogorzelski if Zyskowski could hire a worker for a given wage. Dkt. No. 50-4 at 29–

30. Despite such inconsistencies, Pogorzelski testified that he paid contractors who then paid workers on FCG projects. Dkt. No. 50-3 at 24. Pogorzelski was responsible for paying the workers that Zyskowski hired and made the "ultimate decision" for such payment. Id. at 61, 64. Pogorzelski also authorized an FCG office staff member to issue pay stubs and such member verified the FCG payroll with Pogorzelski weekly. Id. at 63, 78. Therefore, the third factor favors Plaintiffs. As to the fourth *Carter* factor, maintenance of employment records, there is no evidence in the record to conclusively find that Pogorzelski maintained employment records.

Regarding the first *Zheng* factor, there are no allegations that Pogorzelski's premises and equipment were used. Therefore, the first factor is not met. The second, third, and fourth *Zheng* factors – whether the putative employer had a business that could or did shift as a unit from one putative joint employer to another, the extent to which plaintiffs performed a discrete line-job that was integral to the putative employer's process of production, and whether responsibility under the contracts could pass from one subcontractor to another without material changes – are inapplicable to this case. For the reasons discussed previously as to the second *Carter* factor, *Zheng* factor five, the degree to which the putative employer or its agents supervised plaintiffs' work, favors Plaintiffs. As to *Zheng* factor six, whether plaintiffs worked exclusively or predominantly for the putative employer, seven Plaintiffs worked between 40 and 51.5 hours per week (Pls.' 56.1 Stmt. at 7–8), and thus worked predominantly for Pogorzelski.

12

Accordingly, the Court finds that two *Carter* factors and at least one *Zheng* factor weigh in favor of concluding that Pogorzelski was Plaintiffs' employer. *Zheng* also makes clear that a court may consider other appropriate factors. Zheng, 355 F.3d at 71–72 (holding that on remand, "[t]he [District] [C]ourt is also free to consider any other factors it deems relevant to its assessment of the economic realities," beyond the six factors articulated by the court, to determine whether the defendants are employers). One overarching concern that counsels in favor of concluding that Pogorzelski was Plaintiffs' employer under the FLSA is the fact that Pogorzelski was in a position to be aware of and prevent alleged violations of the FLSA and NYLL. Pogorzelski was responsible for paying Plaintiffs that Zyskowski hired and made the "ultimate decision" for such payment. Dkt. No. 50-3 at 61, 64. Therefore, under the totality of the circumstances, the Court finds that Pogorzelski qualifies as Plaintiffs' employer under the FLSA and NYLL. The Court thus recommends that summary judgment be granted on this issue as to Plaintiffs and denied as to Defendants.

## V.    Statute of Limitations

Under the FLSA, the general statute of limitations for minimum wage and overtime claims is two years. 29 U.S.C. § 255(a). However, if the employee proves that the employer's violation is willful, the limitations period is increased to three years. Id.; Young v. Cooper Cameron Corp., 586 F.3d 201, 207 (2d Cir. 2009). A violation is willful if an employee establishes "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988). However,

13

the category of willful conduct does not encompass conduct that is "merely negligent" or "unreasonabl[e]." Id.; Reich v. Waldbaum, Inc., 52 F.3d 35, 39 (2d Cir. 1995).

Because of the difficulty in discerning, as a matter of law, "[c]ourts in this Circuit have generally left the question of willfulness to the trier of fact." Ramirez v. Rifkin, 568 F. Supp. 2d 262, 268 (E.D.N.Y. 2008) (collecting cases). See also Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901, 937 (S.D.N.Y. 2013) ("Although willfulness can sometimes be determined at the summary judgment stage, the standard for proving willfulness is high."). "Plaintiffs must prove more than that defendant 'should have known' it was violating the law. 'Should have known' implies a negligence or 'reasonable person' standard. Reckless disregard, in contrast, involves actual knowledge of a legal requirement, and deliberate disregard of the risk that one is in violation." Damassia v. Duane Reade, Inc., No. 04-CV-8819 (GEL), 2005 WL 1214337, at *3 n.2 (S.D.N.Y. May 20, 2005).

In his deposition, Zyskowski testified that he was aware an employer had an obligation to keep accurate records. Dkt. No. 50-4 at 119. Pogorzelski testified that he was aware of the obligation to provide wage notices upon hiring a worker and compliant wage stubs. Dkt. No. 50-3 at 74, 76. However, Plaintiffs point to no evidence demonstrating Defendants' reckless disregard of their obligation to pay workers their wages and overtime as well as issue wage notices and stubs under the WTPA. In fact, Pogorzelski testified that he believed wage notices were given at hiring (Id. at 76) and Zyskowski recalled giving workers papers at hiring but could not remember if they were the required wage notices. Dkt. No. 50-4 at 62. At another

14

point in his deposition, Zyskowski testified that although he did not give letters to workers at hiring, he was "pretty sure" workers got "some letters." Id. at 64, 85.

This evidence is insufficient to meet the high standard of willfulness at this stage or conclude that Plaintiffs' claims are time-barred. See Hart, 967 F. Supp. 2d at 937 (ruling that willfulness "cannot be determined ... on a motion for summary judgment [where] the evidence on which plaintiffs principally rely is not conclusive as to that point"). The Court thus recommends that both Plaintiffs' and Defendants' summary judgment motions be denied as to willfulness regarding Defendants' alleged failure to issue wage notices and weekly wage statements as required under the WTPA and to pay workers their wages, including overtime.

However, Defendants concede that they knowingly did not pay workers during the nonpayment period because they did not have sufficient funds. Dkt. Nos. 50-3 at 68, 99; 50-4 at 75. "There is no question that Defendants knew that employees must be paid for all hours worked. This legal obligation is axiomatic." Salinas v. Starjem Restaurant Corp., 123 F. Supp. 3d 442, 477 (S.D.N.Y. 2015). Therefore, the Court recommends granting Plaintiffs' motion as to Defendants' willful nonpayment of Plaintiffs during the summer and fall of 2018 and recommends that Defendants' liability for this FLSA violation extend back to cover the nonpayment period.

## VI.    Tenure and Hours Worked

Under the FLSA, if "the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes," the employee must "produce sufficient evidence to show the amount and extent of [the uncompensated work] as a

matter of just and reasonable inference." Kuebel v. Black & Decker Inc., 643 F.3d 352, 362 (2d Cir. 2011) (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946)).  The employee's "own recollection" is sufficient to meet that burden. Kuebel, 643 F.3d at 362.  "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." Id. (quoting Anderson, 328 U.S. at 687-88).

"New York law similarly provides that where an employer fails 'to keep adequate records . . . the employer in violation shall bear the burden of proving that the complaining worker was paid wages, benefits and wage supplements.'" Pest v. Bridal Works of N.Y., Inc., 268 F. Supp. 3d 413, 423 (E.D.N.Y. 2017) (quoting N.Y. Lab. Law §§ 196–a, 195(4)).  "[T]he NYLL—unlike the FLSA—does not permit an employer to discharge this burden by undermining the reasonableness of an employee's evidence that he was underpaid. . . .  An employer must demonstrate that it in fact paid its employees 'wages, benefits, and supplements.'" Gamero v. Koodo Sushi Corp., 272 F. Supp. 3d 481, 498 (S.D.N.Y. 2017) (quoting N.Y. Lab. Law § 196-a(a)).  "'[I]f an employer cannot satisfy its burden under the FLSA, it cannot satisfy th[is] 'more demanding burden' of the NYLL." Gamero, 272 F. Supp. at 498 (internal citation omitted).

Thus, the first question is whether Defendants kept adequate and accurate records of Plaintiffs' wages and hours.  The FLSA requires employers to "make, keep, and preserve" such records.  29 U.S.C. § 211(c).  Under applicable New York law and

16

federal regulations, "employers must maintain records showing, inter alia, (1) total daily and weekly hours employees worked, (2) regular hourly rates of pay for each week in which overtime compensation is due, (3) total daily and weekly earnings, (4) total wages paid, (5) total weekly premium pay for overtime hours, and (6) dates of payment." Lanzetta v. Florios Enters. Inc., 763 F. Supp. 2d 615, 618 n.1 (S.D.N.Y. 2011); see also Gamero, 272 F. Supp. 3d at 505 (faulting records that failed to "demonstrate[ ] the wages Plaintiffs earned *and* the hours they worked") (emphasis in original); Moon v. Joon Gab Kwon, 248 F. Supp. 2d 201, 219 (S.D.N.Y. 2002) (explaining that a log book of hours that missed a whole period of time and did not record every instance worked came "nowhere close to satisfying the detailed recordkeeping requirements of the FLSA and its implementing regulations" and thus was inadequate).

With respect to the present summary judgment motions, Defendants have not produced records of Plaintiffs' wage rates, standard and overtime wages, wage notices, or wage payments.   Rather, Plaintiffs have produced a selection of Defendants' documents from discovery.  Zyskowski testified in his deposition that he was responsible for keeping track of workers' hours.  Dkt. No. 50-4 at 31.  Zyskowski admitted that he wasn't "so good" about tracking workers' hours in a notebook and that was "[his] problem."  Id. at 34.  Workers did not punch their time in and out and there were no sign-in sheets.  Id. at 35.  Rather, on big projects, Zyskowski tracked hours through workers' supervisors who knew the workers' hours.  On small projects, workers told Zyskowski their hours directly.  Zyskowski also stated that he knew an

individual worked eight hours per day on a job because buildings for a given project have regulations that prohibit workers from staying longer than eight hours.  Id. at 33, 37.  Zyskowski had no "backup documentation" to support the timesheets he created for workers, which he created "before or after" a week of work.  Id. at 35, 36.

Under these circumstances, the Court finds that Defendants' records of Plaintiffs' wages and hours do not meet the requirements of 29 U.S.C. § 211(c) and thus applies the burden-shifting framework.  See Gamero, 272 F. Supp. 3d at 504 (applying burden-shifting framework because the defendants-employers did not maintain accurate records of plaintiffs' hours and wages).  Plaintiffs need only provide sufficient evidence to show their wages and hours "as a matter of just and reasonable inference," such as based on their "own recollection[s]."  Kuebel, 643 F.3d at 362 (quotation and internal citation omitted).  Plaintiffs submitted affidavits regarding their wages and hours during their tenure, which included the nonpayment period, and thus have met their burden of production.  See Dkt. No. 50-6.

The burden then shifts to Defendants to demonstrate Plaintiffs' precise wages and hours or to rebut the reasonableness of the inferences to be drawn from Plaintiffs' testimony.  Defendants have failed to meet this burden.  They have produced no evidence in relation to the summary judgment motions demonstrating Plaintiffs' precise wages and hours.  In response to questions about Plaintiffs' hours, Pogorzelski stated that he "go[e]s by whatever we have in our records" (Dkt. No. 50-3 at 116), disputes Plaintiffs' alleged hours if they are "contrary to what we have in our records" (Id. at 132), or "do[esn't] believe that people were working every week for such a long

18

time." Id. at 135.  These unsupported statements are insufficient to rebut Plaintiffs'

recollections.  See Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996)

("conclusory statements, conjecture, or speculation by the party resisting the motion

will not defeat summary judgment.").

Accordingly, the Court recommends granting Plaintiffs' summary judgment

motion as to all Plaintiffs' tenure and the hours worked by Plaintiffs Alvarez, Ayala,

Cua, Hernandez, and Perez.  The Court also recommends granting Plaintiffs'

summary judgment motion as to all Plaintiffs' tenure and the wages of Plaintiffs

Alvarez, Ayala, Cua, Hernandez, and Perez during their respective weeks of

nonpayment during the nonpayment period.

## VII.  First Week of Work

Plaintiffs claim that there was a "one week 'deposit' of work being unpaid by

[FCG] at all times."  Dkt. No. 51 at 11.  Defendants argue that Plaintiffs received

payment for a given week of work at the end of the following week of work in

accordance with the NYLL.  Dkt. No. 47 at 10.  Given the parties' genuine dispute

and the lack of supporting evidence on either side at this juncture, there are questions

of fact as to whether all Plaintiffs were not paid for their first week of work and what,

if anything, Plaintiffs Alvarez, Ayala, Cua, and Hernandez are owed.  Therefore, the

Court recommends denying Plaintiffs' summary judgment motion as to Plaintiffs'

first week of work because these issues can only be determined by weighing the

factual evidence at trial.

## VIII.  Overtime

Plaintiffs claim it is undisputed that Defendants failed to pay overtime.  Dkt. No. 51 at 11.  In support of such claim, Plaintiffs cite Defendants' responses to Plaintiffs' Requests to Admit, Defendants' document production, Pogorzelski's and Zyskowski's deposition testimony, and Plaintiffs' affidavits.  Id. at 12.  The Court cannot consider Defendants' responses to Plaintiffs' Requests to Admit because the Requests to Admit are not included in the parties' submissions and thus the Court cannot determine what Defendants have admitted.  Plaintiffs cited document 85 from Defendants' document production (Pls.' 56.1 Stmt. ¶ 98), but such document was not filed on the docket.

In response to one particular week, Pogorzelski confirmed that Plaintiffs had presented a document showing Cua specifically was not paid overtime.  Dkt. No. 50-3 at 72.  Zyskowski testified that he did not prepare pay stubs and only confirmed workers' hours.  Dkt. No. 50-4 at 67.  Zyskowski also testified that it looked like workers who worked more than 40 hours in a given week were not paid overtime.  Id. at 69.  Such deposition testimony does not support Plaintiffs' argument that "[a]t no time did Defendants pay Plaintiffs or any workers overtime premiums for hours worked in excess of forty per week."  Pls.' 56.1 Stmt. ¶ 95.  Moreover, the fact that the tenure and hours of Plaintiffs Ayala, Cua, Hernandez, and Perez are undisputed does not assist the Court's determination as to overtime payment.  Accordingly, the Court recommends denying Plaintiffs' summary judgment motion as to Plaintiffs' claim that Defendants did not pay Plaintiffs overtime.

## IX.    Liquidated Damages

Plaintiffs also seek liquidated damages under the FLSA and NYLL on all minimum wages, regular rate of pay, and overtime compensation.  Dkt. No. 51 at 15-17.  "Under the FLSA, a plaintiff is entitled to liquidated damages of 100%."  Zhen Ming Chen v. New Fresco Tortillas Taco LLC, No. 15-CV-2158 (RA) (AJP), 2015 WL 5710320, at *5 (S.D.N.Y. Sept. 25, 2015), report and recommendation adopted, 2017 WL 818469 (S.D.N.Y. Mar. 1, 2017)); see also Brito v. Lucky Seven Rest. & Bar, LLC, 19-CV-3876 (PAE) (KHP), 2021 WL 1131506, at *13 (S.D.N.Y. Mar. 24, 2021) ("If an employer violates the minimum-compensation provisions of the FLSA and NYLL, it is liable for both past-due wages and an equal amount in liquidated damages.") (citing 29 U.S.C. § 216(b)).  Liquidated damages "are 'not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA.'"  Hok Chin v. United Restaurant Group, Inc., No. 18-CV-10734 (JGK), 2021 WL 3077480, at *8 (S.D.N.Y. July 20, 2021) (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999)).

Courts may decline to award liquidated damages "'where the employer shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA.'"  Garcia v. JonJon Deli Grocery Corp., No. 13-CV-8835 (AT), 2015 WL 4940107, at *5 (S.D.N.Y. Aug. 11, 2015) (quoting Barfield v. N.Y.C. Health and Hosps. Corp., 537 F.3d 132, 150 (2d Cir. 2008)).  However, the burden on the employer in showing good faith is heavy, and "[d]ouble damages are the norm, single damages

the exception." Reich v. Southern New England Telecomm. Corp., 121 F.3d 58, 71 (2d Cir. 1997) (quoting Brock v. Wilamowsky, 833 F.2d 11, 19 (2d Cir. 1987)); McFarlane v. Harry's Nurses Registry, No. 17-CV-6350 (PKC) (PK), 2020 WL 1643781, at *12 (E.D.N.Y. Apr. 2, 2020) ("The Second Circuit has characterized the employer's burden as a difficult one.") (quoting Barfield, 537 F.3d at 150) (internal quotation marks omitted). A "defendant's failure to point to any evidence sufficient to make such a showing [of good faith] may warrant awarding [liquidated] damages at the summary judgment stage." Nunez v. Broadway Beauty Wholesale Inc., No. 19-CV-362 (JPO), 2020 WL 6063536, at *4 (S.D.N.Y. Oct. 14, 2020) (quoting De Jesus v. Empire Szechuan Noodle House Inc., No. 18-CV-1281 (JPO), 2019 WL 1789901, at *5 (S.D.N.Y. Apr. 24, 2019)).

Here, Defendants do not present any evidence to suggest "they took active steps to ascertain the dictates of and comply with federal or state labor law." Nunez, 2020 WL 6063536, at *5. Neither have Defendants produced "plain and substantial evidence of at least an honest intention to ascertain what the [FLSA] requires and to comply with it." Reich, 121 F.3d at 71 (quoting Brock, 833 F.2d at 19). Thus, the Court recommends granting Plaintiffs' summary judgment motion as to the liquidated damages claim under either the FLSA or NYLL. Plaintiffs may not collect "duplicative liquidated damages for the same course of conduct" under FLSA or NYLL. Rana v. Islam, 887 F.3d 118, 123 (2d Cir. 2018). Instead, Plaintiffs may "'recover under the statute that provides the great[er] relief.'" Underwood v. TAFSC Hous. Dev. Fund Corp., No. 18-CV-6664 (JPO), 2019 WL 5485211, at *4 (S.D.N.Y.

Oct. 25, 2019) (quoting Ortega v. JR Primos 2 Rest. Corp., No. 15-CV-9183 (JCF), 2017 WL 2634172, at *6 (S.D.N.Y. June 16, 2017)).  The exact amount of liquidated damages will be calculated following determinations on any wages and overtime compensation owed to Plaintiffs.

## X.    Wage Notices

The NYLL requires employers to provide annual wage notices to employees hired after April 9, 2011.  See NYLL § 195(1)(a).  Under NYLL § 198(1-b), employees are entitled to recover wage-notice statutory damages of $50 dollars "for each work day that the violations occurred or continue to occur," not to exceed $5,000, together with costs and reasonable attorney's fees.  Plaintiffs claim that they received no such notices either at the beginning of or during their employment.[2]  Defendants' only response is that NYLL states there is no penalty if the employer has paid the employee the wages due.  Dkt. No. 58.  NYLL § 198(1-b) states, however, that this is only a defense if "the employer made complete and timely payment of *all* wages due." (emphasis added).  However, Defendants have not paid Plaintiffs all wages due and admitted same with respect to the nonpayment period.  Therefore, the Court recommends a finding that Plaintiff Alvarez is due $4,950 for the 99 days Alvarez

---

[2] The header of section XV of Plaintiffs' summary judgment motion states that "Defendants are liable for failure to issue weekly wage statements as required by the WTPA, under applicable New York Law."  Dkt. No. 51 at 18.  However, the body of section XV does not address such failure and only refers to Defendants' failure to issue wage notices as required by the WTPA.  Therefore, the Court does not address Plaintiffs' argument as to weekly wage statements.

worked and that the remaining Plaintiffs are due $5,000 each for the over 100 days they worked.

## XI.    Supplemental Jurisdiction

Given the Court's prior rulings, the Court recommends denying Defendants' request that the Court decline supplemental jurisdiction over Plaintiffs' state and local law claims.

## CONCLUSION

For the reasons stated above, the Court respectfully recommends that Plaintiffs' summary judgment motion be granted in part and denied in part, and Defendants' summary judgment motion be denied.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. See also Fed. R. Civ. P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable George B. Daniels, United States District Judge, 500 Pearl Street, Room 1310, New York, New York 10007 and to the Chambers of the undersigned, 40 Foley Square, Room 425, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Daniels. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male Juvenile, 121 F.3d

34, 38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054

(2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v.

Canadair Ltd., 838 F.2d 55, 57–59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234,

237–38 (2d Cir. 1983) (per curiam).


Dated: New York, New York
      January 23, 2023

JENNIFER E. WILLIS
United States Magistrate Judge